UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.T.,<br>　　　　　Plaintiff,<br>　　v.<br>KILOLO KIJAKAZI,<br>　　　　　Defendant. | Case No. 22-cv-07245-SVK<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 15, 19 |

Plaintiff D.T. appeals from the final decision of Defendant Commissioner of Social Security, which denied his application for supplemental security income. The Parties have consented to the jurisdiction of a magistrate judge. *See* Dkts. 6, 10. For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for summary judgment (the "Motion" at Dkt. 15) and **GRANTS IN PART** and **DENIES IN PART** Defendant's cross-motion for summary judgment (the "Cross-Motion" or "Opposition" at Dkt. 19).

**I.    BACKGROUND**

On December 18, 2019, Plaintiff filed an application for Title XVI supplemental security income, alleging a disability onset date of August 1, 2007. *See* AR 172-192.[1] Defendant denied Plaintiff's claim on September 18, 2020 and request for reconsideration of that denial on February 4, 2021. *See id.* at 77-82, 86-90. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") to reassess his claim. *See id.* at 91-93. In a brief he submitted before the hearing, Plaintiff amended his alleged disability onset date to December 13, 2019. *See id.* at 292. Plaintiff then appeared for a hearing before an ALJ on September 1, 2021. *See id.* at 28-40 ("Hr'g Tr.").

---

[1] The Administrative Record is available at Dkts. 13 through 13-8.

The ALJ denied Plaintiff's claim on November 1, 2021.  *See* AR 10-27 (the "ALJ Decision").  She found that Plaintiff has the following severe impairments: "substance induced psychotic disorder; polysubstance abuse; dysthymic disorder; rule out psychotic disorder, NOS; alcohol abuse; borderline intellectual functioning; and a history of paranoid schizophrenia."  *Id.* at AR 15.  She also found that these impairments (both individually and in combination) do not meet or medically equal the requirements of any of impairments listed in 20 C.F.R. Section 404, Subpart P, Appendix 1 (the "Listings").  *See id.* at AR 16-17.  She then found that Plaintiff maintains a residual functional capacity ("RFC") to "perform a full range of work at all exertional levels," but with certain non-exertional limitations.  *See id.* at AR 17-18.  Finally, she found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  *Id.* at AR 22.  In light of these findings, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since December 13, 2019."  *Id.* at AR 23.

Plaintiff subsequently requested that the Appeals Council review the ALJ's decision, and the Appeals Council denied Plaintiff's request.  *See* AR 1-3.  Plaintiff then timely filed an appeal to this Court seeking review of the ALJ Decision.  *See* Dkt. 1.  Now before the Court are Plaintiff's Motion and Defendant's Cross-Motion, which were filed pursuant to Civil Local Rule 16-5 and are ready for decision without oral argument.

**II.  ISSUES FOR REVIEW**

In this Order, the Court reviews the following issues:

1. Did the ALJ properly evaluate the medical evidence?
2. Did the ALJ err in discrediting Plaintiff's subjective statements regarding his symptoms?
3. Did the ALJ properly evaluate whether Plaintiff's impairments meet or medically equal the requirements of any of the Listings?
4. Did the ALJ properly evaluate the testimony of the vocational expert (the "VE")?

///

///

///

### III. STANDARD OF REVIEW

The Court is authorized to review Defendant's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (citation omitted). The Court's limited role allows it to disturb an ALJ's decision only if that decision is (1) not supported by substantial evidence or (2) based on the application of improper legal standards. *Id.* at 492.

**Not Supported By Substantial Evidence:** "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted); *see also Rounds v. Comm'r SSA*, 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' and 'must be "more than a mere scintilla," but may be less than a preponderance.'" (citation omitted)). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from [Defendant's] conclusion." *Rounds*, 807 F.3d at 1002 (citation omitted). But where "the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Id.* (citation omitted).

**Application Of Improper Legal Standards:** Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (citations omitted).

///

///

///

3

## IV. DISCUSSION

As explained below, the Court holds that the ALJ acted properly with respect to Issues One and Two and erred with respect to Issues Three and Four.

### A. Analysis Of Issue One: The ALJ Properly Evaluated The Medical Evidence

Federal regulations require an ALJ to evaluate medical evidence along five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization and (5) "other factors." *See* 20 C.F.R. § 416.920c(c). The two "most important factors" are supportability and consistency, and the regulations require an ALJ to expressly discuss these factors in their decision; they do not obligate an ALJ to expressly discuss the remaining factors. *See id.* § 416.920c(b)(2); *see also Gentry S. v. Kijakazi*, No. 20-cv-05814-SVK, 2022 WL 1601413, at *3 (N.D. Cal. Mar. 31, 2022). Supportability concerns the relevance of "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)." 20 C.F.R. § 416.920c(c)(1). Consistency, in turn, concerns the consistency between a medical opinion and "the evidence from other medical sources and nonmedical sources." *Id.* § 416.920c(c)(2).

Plaintiff argues the ALJ improperly applied the supportability and consistency factors in analyzing the medical opinions of four medical examiners: Doctors Dixit, Gross, Amado and Kirsch. *See* Motion at 4-8. The Court disagrees.

#### 1. The ALJ Properly Concluded That The Findings Of Doctors Dixit, Gross And Amado Were Persuasive

Doctors Dixit, Gross and Amado all opined that Plaintiff's medical and psychological conditions would not significantly impair his ability to work. *See* AR 51-52 (Gross), 69 (Amado), 362 (Dixit). In finding these opinions persuasive, the ALJ discussed in detail the doctors' findings and expressly noted the supportability and consistency of those findings. *See* ALJ Decision at AR 20-21. Indeed, each doctor's report identifies the evidence considered, which supports their conclusions (*see* AR 41-52 (Gross), 54-70 (Amado), 360-62 (Dixit)), and all three doctors reached similar conclusions. Finding these opinions to be persuasive is therefore supported by substantial evidence.

In rejecting this conclusion, Plaintiff identifies perceived deficiencies in each of these

4

doctor's reports and the ALJ's analysis of them. The Court finds Plaintiff's arguments to be without merit.

**With Respect To Doctor Dixit:** *First*, Plaintiff argues the ALJ improperly relied on Doctor Dixit's "de minimis" findings in finding Doctor Dixit's opinion to be persuasive, such as Plaintiff's ability to perform simple household tasks (*e.g.*, washing dishes, doing laundry) and his ability to perform simple mental tasks (*e.g.*, solve simple math problems, following three-step commands). *See* Motion at 5; *see also* ALJ Decision at AR 19. He bases this criticism of the ALJ's reasoning on regulatory language accompanying the relevant Listings that explains that a claimant's mental functioning outside of a work setting "will not necessarily" be extrapolated as applying in a work setting and that an ALJ must consider "all evidence about [a claimant's] mental disorder and daily functioning." *See* Listings at 12.00F.3.c. But evidence of Plaintiff's mental functioning outside of a work setting is not *per se* irrelevant, as acknowledged by the regulatory language Plaintiff himself cites. *See id.* ("We will consider all evidence about your mental disorder and daily functioning before we reach a conclusion about your ability to work." (emphasis added)); *see also* 20 C.F.R. § 416.920c(c)(2) (consistency evaluated based on both "medical sources and nonmedical sources"); *see, e.g.*, *Billy P. v. Kijakazi*, No. 22-cv-00113-DEB, 2023 WL 6378020, at *4-5 (S.D. Cal. Sept. 28, 2023) (ALJ properly considered evidence of daily functioning in evaluating persuasiveness of medical opinions).

***Second***, Plaintiff argues the ALJ ignored two pieces of medical evidence that contradicted Doctor Dixit's opinions. *See* Motion at 6 (citing medical evidence at AR 308, 370). However, the ALJ properly ignored this evidence. The first piece of evidence is a psychological evaluation dated September 10, 2007. *See* AR 304-09. As the ALJ correctly observed, such evidence, which predates the alleged disability onset date by over a decade, need not be considered. *See* ALJ Decision at AR 21; *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance." (citation omitted)); *see, e.g.*, *Aileen M. v. Saul*, No. 19-cv-01522-JST, 2020 WL 6074191, at *6 (N.D. Cal. Aug. 13, 2020) (ALJ properly discounted medical opinion rendered before alleged onset date). The second piece of evidence is Doctor Kirsch's report (*see* AR 365-374), but the ALJ properly found this

5

report not to be persuasive.  *See* Section IV.A.2, *infra*.

***Third***, Plaintiff argues Doctor Dixit's report is internally inconsistent, because she "remarked that [Plaintiff] said he was 'able to provide for his own grooming and hygiene[,]'" but later "note[d] that Plaintiff was 'disheveled with compromised hygiene and grooming.'"  Motion at 6 (citations omitted).  These observations do not render Doctor Dixit's report internally inconsistent.  Plaintiff "<u>said</u>" he maintains his own grooming and hygiene, and Doctor Dixit noted his unkempt appearance.  *See* AR 361 (emphasis added).  Those facts can simultaneously be true—it is entirely possible that Plaintiff stated he can maintain his own grooming and hygiene, and that statement may simply be false, as suggested by Doctor Dixit's observation.

***Fourth***, Plaintiff argues Doctor Dixit's "remark that [Plaintiff's] uncle had to provide additional pertinent details should have been a red flag to any mental health expert that the Plaintiff is not a reliable historian and that he has a propensity to overstate his functional abilities."  Motion at 6.  But Plaintiff mischaracterizes Doctor Dixit's report.  Doctor Dixit did not state that Plaintiff's uncle "<u>had</u> to provide additional pertinent details" (*id.* (emphasis added)) and instead merely noted that Plaintiff's uncle did so.  *See* AR 360 ("His uncle provided additional pertinent details.").  Further, Doctor Dixit did not rely solely on Plaintiff's own statements about his capabilities—she observed Plaintiff's behavior and evaluated his performance on a series of tests.  *See id.* at 361-62.

**With Respect To Doctors Gross And Amado:**  ***First***, Plaintiff argues Doctors Gross and Amado based their conclusions on "little to no records."  Motion at 7.  However, these doctors' reports enumerate the various medical records in their possession.  *See* AR 42-43 (Gross report listing seven medical records); *id.* 56-58 (Amado report listing 10 medical records).  Plaintiff does not address these records.

***Second***, Plaintiff argues Doctors Gross and Amado relied on "the flawed opinion of Dr. Dixit."  Motion at 7.  As explained above, however, the Court rejects Plaintiff's attempts to discredit Doctor Dixit's opinions, and the ALJ properly found her opinions to be persuasive.

***Third***, Plaintiff argues Doctors Gross and Amado prepared their reports without the benefit of reviewing Doctor Kirsch's subsequently issued report.  *See id.*  As discussed below, however,

6

the ALJ properly found Doctor Kirsch's report not to be persuasive. *See* Section IV.A.2, *infra*. Further, "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020). Thus, the Court will not fault the ALJ for relying on medical opinions issued before all the evidence had been gathered. *See, e.g.*, *id.* ("At the time they issued their opinions, the non-examining experts had considered all the evidence before them . . . .").

### 2. The ALJ Properly Concluded That The Findings Of Doctor Kirsch Were Not Persuasive

Doctor Kirsch opined that Plaintiff's medical and psychological conditions would result in "moderate," "marked" and "extreme" impairments of his ability to work. *See* AR 373. In finding this opinion unpersuasive, the ALJ discussed in detail Doctor Kirsch's findings and expressly noted the internal inconsistencies in her findings and the inconsistencies between her findings and other medical evidence in the record. *See* ALJ Decision at AR 20-21. Finding her opinion to be unpersuasive is therefore supported by substantial evidence.

In rejecting this conclusion, Plaintiff identifies perceived deficiencies in the ALJ's analysis of Doctor Kirsch's report. The Court finds Plaintiff's arguments to be without merit.

***First***, Plaintiff argues the ALJ improperly relied on evidence of Plaintiff's "adequate attention and concentration throughout [Doctor Kirsch's ] evaluation," because Ninth Circuit precedent does not require complete incapacitation to find disability. *See* Motion at 7. But the ALJ did not decline to find Plaintiff disabled because he was not completely incapacitated—she simply found evidence of Plaintiff's ability to pay attention and concentrate as inconsistent with Doctor Kirsch's findings. *See* ALJ Decision at AR 20.

***Second***, Plaintiff argues Doctor Kirsch's opinion is consistent with other medical evidence in the record, namely two reports from 2007. *See* Motion at 8 (citing AR 308, 313). But as previously discussed, the ALJ properly disregarded such outdated evidence. *See* Section IV.A.1, *supra*.

***Third***, Plaintiff argues the ALJ failed to consider all of Doctor Kirsch's findings and the

7

full range of testing she performed. *See* Motion at 7-8. But an ALJ need not consider every piece of evidence in rendering a decision, so long as she does "not ignore significant probative evidence that bears on the disability analysis." *See Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022). In any event, the ALJ expressly considered Doctor Kirsch's findings and explained why she found them unpersuasive. *See* ALJ Decision at AR 20-21.

* * *

Ultimately, Plaintiff quarrels with the ALJ's reliance on evidence unfavorable to him and rejection of his preferred, more-favorable evidence. Accepting either of Plaintiff's preferred or unpreferred evidence finds some support in the record. Under such circumstances, the Court must defer to the ALJ, whose conclusions are supported by substantial evidence. *See King v. Astrue*, 497 F. App'x 758, 760 (9th Cir. 2012) ("Indeed, even '[w]here the evidence as a whole can support either outcome, we may not substitute our judgement for the ALJ's.'" (citations omitted)).

### B.  Analysis Of Issue Two: The ALJ Properly Discredited Plaintiff's Subjective Statements Regarding His Symptoms

An ALJ must follow a two-step analysis in evaluating a claimant's subjective statements about their symptoms:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection.

*Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations and quotation marks omitted). Here, Plaintiff argues the ALJ erred at the second step, because she "used flawed evidence and a boilerplate statement to reject the evidence provided in [Plaintiff's] testimony." Motion at 9. The Court disagrees.

***First***, the ALJ did not merely provide a "boilerplate statement," and instead discussed in detail the medical evidence in the record. *See* Section IV.A, *supra* (ALJ discussed reports of Doctors Dixit, Gross, Amado and Kirsch in detail); ALJ Decision at AR 18 ("[H]owever,

8

[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record <u>for the reasons explained in this decision</u>." (emphasis added)).

***Second***, the allegedly "flawed evidence" the ALJ considered was not the only evidence she considered. Specifically, Plaintiff criticizes the ALJ's reference to Plaintiff's ability to maintain his own hygiene, prepare simple meals, shop at stores and perform light cleaning, because performing such "trivial tasks [does] not shed light on the Plaintiff's ability to function in the work place." *See* Motion at 9-10. What Plaintiff ignores, however, is the ALJ's detailed discussion of Plaintiff's other capabilities, as described in the reports of Doctors Dixit, Gross and Amado. *See, e.g.*, ALJ Decision at AR 19 ("He was able to remember three out of three objects immediately and after three minutes. He was able to perform simple mathematical problems, perform serial threes, follow a three-step command, and perform serial sevens. He was able to spell the word 'forget' forward and backward. Moreover, the claimant demonstrated fair insight and adequate social and personal judgment." (citing Dixit report)), AR 21 ("The claimant is able to understand, carry out, and remember simple instructions (e.g., understanding and learning terms, instructions, and procedures; maintaining attention concentration for approximately two hour blocks. The claimant is able to understand, carry out, and remember one to two step instructions; recognizing a mistake and correcting it; being able to work consistently and at a reasonable pace for approximately two-hour segments between arrival, first break, lunch, second break, and departure." (citing Gross report)).

Plaintiff also argues the ALJ failed to consider Plaintiff's then-recent (at the time of the September 1, 2021 hearing) failed work attempt. *See* Motion at 9-10. But such non-medical evidence alone could not justify crediting Plaintiff's subjective statements about his symptoms where, as here, the ALJ had already concluded that the <u>medical</u> evidence did not support those subjective statements. *See* 20 C.F.R. § 416.929(a) ("However, statements about your pain or other symptoms will not alone establish that you are disabled. <u>There must be objective medical evidence</u> from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . . ." (emphasis

9

added)). Further, Plaintiff presented the ALJ with little evidence to consider about his failed work attempt. *See* AR 292-98 (no express discussion of Plaintiff's failed work attempt in pre-hearing brief); Hr'g Tr. at AR 31-32 (counsel asking Plaintiff two questions only about failed work attempt).[2]

### C. Analysis Of Issue Three: The ALJ Failed To Consider Whether Plaintiff's Impairments Meet Or Medically Equal The Requirements Of Listing 12.05

Plaintiff argues the ALJ erred in concluding his impairments do not meet or medically equal the requirements of Listings 12.05 or 12.11, because the ALJ (1) improperly relied on the opinions of Doctors Dixit, Gross and Amado, (2) declined to find persuasive the opinion of Doctor Kirsch and (3) overemphasized the relevance of "*de minimis* things that would not carry over to the rigors of an 8-hour competitive work environment."[3] *See* Motion at 10. As discussed above, however, the ALJ properly found the opinion of Doctor Dixit to be persuasive, and she based her finding that Plaintiff's impairments do not meet or medically equal Listing 12.11 on Doctor Dixit's findings. *See* ALJ Decision at AR 16-17 (citing 4F portion of Administrative Record). The reports of Doctors Gross and Amado, which the ALJ also properly found to be persuasive, further support a finding that Plaintiff's impairments do not meet or medically equal the requirements of Listing 12.11. *See* AR 47 (Gross report discussing Listing 12.11), 61 (Amado report discussing Listing 12.11); *see also A.L. v. Kijakazi*, No. 21-cv-07654-SVK, 2023 WL 3028084, at *6 (N.D. Cal. Apr. 19, 2023) ("Factual support for the ALJ's conclusion on the Listings properly can be deduced from the ALJ's discussion of the medical evidence elsewhere in his decision." (citations omitted)). Plaintiff cites only to Doctor Kirsch's report in support of his assertion that he satisfies the requirements of Listing 12.11, but the ALJ properly found Doctor Kirsch's report not to be persuasive.[4] *See* Motion at 10 (citing AR 365-74). Therefore, the ALJ's

---

[2] Doctor Kirsch also recounted Plaintiff's then-recent failed work attempt in her report. *See* AR 366. However, her discussion includes little detail beyond what Plaintiff testified during the hearing.

[3] Plaintiff does not challenge the ALJ's findings that his impairments do not meet or medically equal the requirements of Listing 12.03 and 12.04. *See* Motion at 10; *see also* ALJ Decision at AR 16-17.

[4] Although the ALJ did not find Doctor Kirsch's findings to be persuasive, she confusingly

10

finding that Plaintiff's impairments do not meet or medically equal the requirements of Listing 12.11 is supported by substantial evidence.

The ALJ did not, however, discuss Listing 12.05 in her decision. *See* ALJ Decision at AR 16-17 (no discussion of Listing 12.05 within analysis of Listings); *see also* Opposition at 16 n.8 (Defendant acknowledging ALJ discusses Listings 12.03, 12.04 and 12.11 only). Yet Plaintiff expressly argued in his pre-hearing brief that his impairments meet or medically equal the requirements of Listing 12.05. *See* AR 294-95. To be sure, failure to consider a particular Listing may constitute harmless error where an ALJ's decision provides sufficient reason to conclude that a claimant's impairments do not meet or medically equal the requirements of that Listing. *See, e.g.*, *Kenneth C. v. Saul*, No. 19-cv-06627-JST, 2021 WL 4927413, at *15 (N.D. Cal. Mar. 15, 2021) ("The ALJ did not specifically mention listing 11.14, but she provided an adequate basis for rejecting this listing because she considered the relevant medical evidence in her RFC determination at step four of her analysis." (citations omitted)). But the ALJ did not provide such sufficient reason here.

Listing 12.05 contains two sets of requirements—Paragraph A requirements and Paragraph B requirements—and a claimant's impairments meet or medically equal the requirements of the Listing if either set of requirements is met. *See* Listings at 12.05. Here, although the ALJ did not expressly discuss Listing 12.05 in her decision, she did expressly discuss the Paragraph B requirements of Listings 12.03, 12.04 and 12.11, and the Paragraph B requirements of those Listings parallel the Paragraph B.2 requirements of Listing 12.05, which must be satisfied for the Paragraph B requirements of Listing 12.05 to be met. *See* ALJ Decision at AR 16-17; *compare* Listings at 12.05B.2, *with* Listings at 12.03B, 12.04B, 12.11B. Accordingly, a finding that Plaintiff's impairments do not satisfy the Paragraph B requirements of Listing 12.05 is supported

---

cites to Doctor Kirsch's report throughout the portion of her decision in which she finds that Plaintiff's impairments do not meet or medically equal the requirements of Listing 12.11. *See* ALJ Decision at AR 16-17 (citing 6F portion of Administrative Record). Further, some of the propositions for which the ALJ cites to Doctor Kirsch's report do not appear to be supported by Doctor Kirsch's report. Nevertheless, as explained above, the ALJ's findings regarding Listing 12.11 are supported by the medical opinions that she properly found to be persuasive.

by substantial evidence. *See, e.g.*, *Turner v. Berryhill*, 705 F. App'x 495, 498 (9th Cir. 2017) ("The ALJ's opinion concludes that Turner's mental impairments did not meet or medically equal the criteria of Listing 12.07 (Somatoform Disorders), rather than Listing 12.08 (Personality Disorders), an apparent typographical error. Any error, however, was harmless, as the ALJ determined that Turner failed to meet the requirements of Paragraph B of Listing 12.07, which are identical to the requirements of Paragraph B of Listing 12.08, and substantial evidence supports the ALJ's conclusion that Turner did not meet those requirements." (citation omitted)).

      However, nowhere in her decision did the ALJ expressly address the Paragraph A requirements of Listing 12.05, which, if satisfied, would provide an independently sufficient basis for finding Plaintiff disabled. That failure constitutes reversible error, because Plaintiff argued at the administrative level that his impairments meet or equal the requirements of Listing 12.05, thereby requiring the ALJ to address that Listing. *See, e.g.*, *Thresher v. Astrue*, 283 F. App'x 473, 475 (9th Cir. 2008) ("Here the ALJ did suggest that Thresher was not functionally mentally retarded, but the ALJ's failure to reference § 12.05 and, in particular, Listing 12.05C makes it unclear whether the ALJ came to grips with the specific requirements of that section when she issued her decision. . . . Thus, we remand . . . for clarification regarding the nature of the considerations applied at step 3 and, particularly, precisely what was decided and why." (citations omitted)); *Santiago v. Barnhart*, 278 F. Supp. 2d 1049, 1058 (N.D. Cal. Aug. 13, 2003) ("Here, Santiago presented a plausible theory of equivalency to the ALJ. The ALJ, however, did not provide any explanation responsive to Santiago's argument. . . . There was no discussion on how Santiago's alleged impairments failed to meet the listed impairments identified by Santiago." (emphasis added) (citations omitted)).

///
///
///
///
///
///

### D. Analysis Of Issue Four: The ALJ Failed To Explain Why She Disregarded A Potentially Dispositive Portion Of The VE's Testimony

Plaintiff's final argument is that the ALJ's assessment of Plaintiff's RFC was flawed by (1) her reliance on the medical reports of Doctors Dixit, Gross and Amado that Plaintiff argues she should not have found to be persuasive and (2) her failure to consider all of the VE's testimony. *See* Motion at 11.  With respect to Plaintiff's first argument, the Court has already concluded that the ALJ's persuasiveness findings regarding the various doctors' reports in the record are supported by substantial evidence.  *See* Section IV.A, *supra*.  With respect to Plaintiff's second argument, however, the Court agrees that the ALJ improperly disregarded the VE's testimony.

During the September 1, 2021 hearing, the ALJ asked the VE, *inter alia*, whether two hypothetical persons would be able to find work (*see* Hr'g Tr. at AR 37-39):

- **Person One:** An individual affected by certain impairments equivalent to those impairments impacting Plaintiff.
- **Person Two:** An individual affected by the same impairments as Person One, but whose impairments would also result in a time off task of 25%.

The VE testified that Person One could find work in multiple positions, but that Person Two could find no work at all:

> Q: Would [Person Two] be able to do those jobs that you listed [for Person One]?
>
> A: No, Your Honor, definitely not.

*Id.* at AR 38.  Plaintiff's counsel then asked the VE about a hypothetical person impacted by the same impairments listed by the ALJ but whose impairments would result in a time off task of 15%; the VE again testified that such an individual could not find work.  *See id.* at AR 39 ("15% off task time in this hypothetical precluded all work.").

Thus, if (1) either time-off-task hypothetical (*i.e.*, 25% or 15%) applied to Plaintiff and (2) the ALJ credited the VE's time-off-task testimony, then a finding of disability would have been appropriate.  *See* 20 C.F.R. § 416.920(a)(4)(v).  But the ALJ did not address the VE's time-off-task testimony and merely noted in passing that the VE testified about time off task; she did not

13

explain what the VE said about time off task or why she ignored that testimony. *See* ALJ Decision at AR 22-23. That failure constitutes reversible error. *See, e.g.*, *O'Connor v. Astrue*, No. 09-cv-01508-JCS, 2010 WL 3785433, at *13 (N.D. Cal. Sept. 27, 2010) (ALJ erred by ignoring testimony of VE provided in response to hypothetical question that contradicts ALJ's determination); *Barbee v. Berryhill*, No. 16-cv-01779-BEN, 2017 WL 3034531, at *18 (S.D. Cal. July 18, 2017) (remanding "because the ALJ failed to explain at step five why he disregarded the VE's testimony"), *report and recommendation adopted*, 2017 WL 3772975 (S.D. Cal. Aug 31, 2017).

This error is not harmless, because medical evidence in the record—including medical evidence the ALJ found to be persuasive—suggests that Plaintiff's impairments would result in at least some time off task. *See, e.g.*, AR 48-50 (Gross report noting "slow response time" resulting in "moderate limit[ation]" in "ability to complete a normal workday and workweek without interruptions . . . and to perform at a consistent pace without an unreasonable number and length of rest periods"), 65 (Amado report noting similar "moderate limit[ation]"). The non-medical evidence of Plaintiff's then-recent (at the time of the September 1, 2021 hearing) failed work attempt also suggests Plaintiff might experience time off task:

> Q: What were the reasons that you had to be let go of that position?
>
> A: I was just – wasn't doing, like, I was kind of slow and I was wandering around.

Hr'g Tr. at 31-32. Further, the ALJ's decision to *sua sponte* ask the VE about time off task suggests that she too viewed the record as implicating Plaintiff's time off task.

///
///
///
///
///
///

14

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion, **GRANTS IN PART** and **DENIES IN PART** Defendant's Cross-Motion and **REMANDS** this action for further proceedings. On remand, Defendant must expressly address the following issues:

- Whether Plaintiff's impairments meet or medically equal the requirements of Listing 12.05.
- The extent to which Plaintiff's impairments would result in time off task.
- The VE's testimony regarding time off task.
- Defendant's reasons for accepting or disregarding the VE's testimony regarding time off task.

**SO ORDERED.**

Dated: October 17, 2023

_Susan van Keulen_
SUSAN VAN KEULEN
United States Magistrate Judge